Mr. Koenig, whenever you're ready. Thank you, Your Honor. I'm Peter Koenig with Squire Patent Bogs, representing Nan Ya. Basically, in this case, the Department of Commerce supplied adverse facts available to Nan Ya for not responding to a dumping margin questionnaire. The adverse facts available, I think the law is pretty accepted for this decision. It has to be based on commercial reality and non-aberrant. You say that's pretty accepted? Okay. Let's start with some stuff, Mr. Koenig. Okay, sure. Number one, your reference to other popular quote, popular statistics, methodologies, the Hample Identifier Test and the Box and Whisker Plot, where's that in the record that you raised it before the court? We stated in our brief that it's not. That's just, we were... So why should we consider them, given that you didn't exhaust them before Commerce or the Court of International Trade? Actually, we believe it's the burden of proof of commerce, which we will just focus on that, the burden of proof of commerce to show... So we shouldn't consider them? Correct. Okay, fine. Let's start with Commerce's interpretation of 19 U.S.C. 1677EB4, the highest transaction-specific margin as adverse facts available. Your arguments contain a common theme, that Commerce impermissibly interpreted the statute when it determined the phrase, any other information placed on the record permitted the agency to use Shenkong's highest transaction-specific margin as adverse facts available. But you don't analyze Commerce's interpretation against the operative Chevron framework. Past decisions of this court and the Court of International Trade suggest that we should consider your arguments waived. U.S. v. Great American Insurance Company, for instance. It's well-established that courts, that arguments that are not appropriately developed in a party's briefing can be deemed waived. Why shouldn't we reach the same conclusion in this case on that issue? Well, our specific appeal is that Commerce's decision says that the AFA should be non-aberrant. And so we're going on, is there substantial evidence that it's non-aberrant? So that's our... So your answer is it should be waived, in other words? Yeah, we're not making a statutory argument, correct. Okay. Except substantial evidence. You contend that various statistical methods demonstrate that Commerce's interpretation of U.S.C. 1677 E.B. 1, I'm sorry, E.B., is unlawful. What legal authority requires Commerce to consider those methods when interpreting the statute? Give me some case authority. Our specific argument is the Commerce, the methodology Commerce does use has to be supported by substantial evidence. And we're limiting it to that narrow argument. You contend that 1677 E.B., the Commerce interpretation of it, is impermissible because it relies solely on deterrence. Is that fair to say? Correct. Okay. In other words, you didn't submit any information to Commerce. You just rely on that interpretation. The trade court observed that in contesting the 70.4.34% rate that Commerce selected as adverse facts available. You didn't analyze your own data against pro-offered statistical methods, only Xinkang's. Why did you fail to incorporate your own data in the analysis? Well, the Commerce was relying on the Xinkang. And if you're going to rely on that, Commerce itself has a burden to show that their methodology is supported by... But you didn't bring in your own data at all, did you? Well, actually, from the prior review, we did. And it's cited from the prior review. So you incorporated into your analysis? Not in the brief before this court. So again, we're just focused on whether Commerce decision is supported by substantial evidence. And we're focused on the Commerce relied on standard alone. And the data Commerce used, we believe that the decision was not supported by substantial evidence. But there was substantial evidence. There was a sale by Xinkang. The substantial evidence? Yeah. Well, if you go by Xinkang and you look at it, and Commerce says if there's a continuum of dumping margins, each insignificantly greater than the prior one, then the highest one is supported. But if you look at the Commerce's own data on the dumping margins, there is not a continuum. There's in fact a significant jump. Why does there have to be a continuum? Why does there have to be? Well, that's how Commerce... Well, that would be my question to Commerce. What's the standard they're applying? Because they're saying that it has to be non-avarant the dumping margin. And they introduced the continuum test. And if you go based on this continuum test, then for one, they don't define then what they mean by it as far as what is a significant gap. If you look at statutory measures of what is a significant gap, like 0.5% or 3%, and if you go based on... Those are the only standards we see in the statute. Commerce could offer another standard, but they have not. Well, you're not suggesting Commerce is required to use the average margin at the most frequent margin, right? Correct. So Commerce picked a few of the margins that were close to the chosen rate, and that's how it justified the highest transaction-specific rate. What's wrong with that? I'm having trouble, as I think my colleagues are, in figuring out why as a matter of law... Are you arguing as a matter of law they used improper calculations? Because they didn't apply a standard, or they didn't articulate a standard or apply it. What standard are they required to apply? They picked the number, they justified it, they compared it to the other calculations because you didn't offer up any evidence of your own. What else were they supposed to do? If you're going to say that what you're doing is that there's a continuum, that you have to provide some standard for what is a continuum, because otherwise, the way it was applied here, we would argue, is basically you put down some data and you say the highest one is the right one. That's not a standard. Obviously in any case there's going to be a continuum, but what do you mean by that? Here the dumping margins were fairly close, and then they started to jump up, and Commerce just said, well that's a continuum. You've got to apply some type of standard. The basic fact is that your client didn't cooperate. Correct. They did not answer the questionnaire. 1677 EC is the corroboration portion of the statute. It seems to me the statute pretty unambiguously contrasts information obtained in the course of a review, that is to say primary information, with secondary information. Would you agree with that? Correct. But it also suggests, the statute does, that the former, that is primary information, does not need to be corroborated when it's used by Commerce. My reading of the government's opinion is that it believes the trade court erred when it held that the agency needs to corroborate primary information. You didn't analyze the statute against the Chevron framework. Do you have a position on what the statute actually requires? Primary versus secondary. Here we're talking about the current administrative review where they used information from that, so corroboration doesn't even come into play for the current administration. So you would agree with the government that corroboration wasn't required? Not for the, yeah, correct, for the, using the Shin Kong. Well, you're into your rebuttal. Do you want to sit down here for the government and save the rest of your time for rebuttal? Thank you, your honors. May it please the court. As noted in this administrative review, NANYA refused to cooperate. The Commerce Department looked at the record to find what was the highest weighted average dumping margin in this segment, any previous segment, or the investigation, and they determined that the highest calculated weighted average dumping margin was NANYA's own cooperative margin from the immediately prior segment. The Commerce Department determined that assigning NANYA its own cooperative rate would not be appropriate as an adverse facts available rate. Are you talking about the earlier review, the earlier 99% or whatever the number was? No, their weighted average margin was 18.3%, and I'm just explaining why they went to transaction specific margins instead of applying a prior weighted average margin. In the prelim, as your honor noted, the Commerce Department selected a 99% transaction specific margin that was calculated for NANYA in the prior segment. In its case brief to the Court of International Trade, NANYA argued that Commerce should look to the current review, the current segment, and use the information there, and that's what Commerce did in the final. They applied the highest transaction specific margin for Shin Kong in the current review. Is there any objective standard that exists for determining whether or not there's a particular margin as just an outlier? The Commerce Department, there's no specific standard. This court in DeChecco granted Commerce the discretion in choosing the sources and facts to rely on to support an adverse facts available rate. If you're asking about the specific tests that were cited in NANYA's brief, those tests are tests to determine whether the individual observations are different than the average or median calculated margin for Shin Kong. In other words, these are tests that are saying whether 74... I want to know what the government's test is. Your position is you're not required or compelled to use the average, but what standard do you use? You picked one number, and how do you know that number isn't necessarily an outlier? What's the standard? The Commerce looks to see whether it's supported by substantial evidence. What is supported by substantial evidence? The selected transaction specific margin. Here, the Commerce Department determined that this was supported by substantial evidence because it was a calculated rate on the review. It was the same review. It was a company selling the same merchandise. It wasn't significantly higher than the other calculated dumping margins. It would fall within the mainstream of margins. It was not the result of an aberrational transaction. They looked at the weight, the quantity in the shipment to see whether it was within the normal range of quantity, whether it was... It's all subject merchandise, but they looked to see if it was specifically different in the factors that are considered in the condom analysis and determined that this was not an aberrational transaction and it was appropriate to use. NANYA makes a number of allegations regarding the transaction that it was aberrational because it was a small quantity, but part of that is just a function of how many transactions there are in the entry. If you have a thousand transactions, the average transaction is going to be a tenth of a percent. Your brother, Mr. Koenig, seems to agree with the government's position that... Does agree with the government's position that the Corp of International Trade erred in requiring corroboration of primary information. Do you want to say anything about that or just leave it to your brief? We'll just leave that to our brief. Your Honor. Your friend repeatedly talked about a continuum, so what is the context of that? Yes. Mr. Koenig objects to the Commerce Department's citation that this rate was part of a continuum. I guess the best evidence that this was part of a continuum. This is business proprietary information, but I would note that at the bottom, the footnote at the bottom of page 41 continuing on to page 42, it shows the highest rates that were calculated for NANYA in the prior segment and Commerce chose the 99% rate as being an appropriate rate. There are rates higher than that that the Commerce Department did not select because they felt that 99 was the appropriate rate and was non-aborational. Where are you on the record on that? It's a footnote in our brief at the bottom of page 41 wrapping on to page 42. It's in the appendix at page 131 of the appendix. Okay. Got you. Thank you. If the panel has no further questions, we simply ask that you sustain the opinion of the Court of International Trade. Thank you. Oh, really? Even the part you want reversed? Affirmed. Sorry. We have some time left now. Actually, I think we've pretty much stated our position, so unless there are any questions. Okay. Thank you.